IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ILLUMINATION DYNAMICS CO., LTD.,

                                Plaintiff,                              ORDER

    v.

                                                               14-cv-613-wmc

PACIFIC LIGHTING SOLUTIONS, L.L.C.
and BILL ZHANG, an individual,

                                Defendants.

---

A telephonic hearing was held on the plaintiff's motion for *ex parte* writ of attachment on October 29, 2014. Plaintiff appeared by Jimmie L. Williams, Jr. and Jordon Loeb of the Burnham Brown and Cullen Weston Pines & Bach LLP law firms, respectively. The corporate defendant, Pacific Lighting Solutions, L.L.C., which is allegedly owed a debt by a Wisconsin corporation, was served with the motion for writ of attachment, supporting affidavits and other documents on September 16, 2014, through its legal counsel (as the person authorized by the defendant to receive service of process). (Dkt. #7.) Nevertheless, Pacific Lighting chose not to file a written opposition to the issuance of a writ, nor did it make an appearance at the October 29 hearing.[1] Because the plaintiff has submitted adequate support for the court to issue a pre-judgment writ of attachment against unpaid purchase orders by a Wisconsin corporation, a writ will issue under the terms and conditions set forth below.

---

[1] The individual defendant, Bill Zhang, has not to this court's knowledge been personally served. (Dkt. #8.)

BACKGROUND

Plaintiff Illumination Dynamics Co., Ltd. ("IDT") brings this lawsuit solely for the purpose of acquiring a writ of attachment against defendants Pacific Lighting Solutions L.L.C. ("PLS") and Bill Zhang. (*See* Compl. (dkt. #1).) IDT is a Chinese manufacturer of high-end lighting products. PLS is the United States importer for IDT's products and sells those products to retailers throughout the United States.

As a preliminary matter, the court notes that this case is before it via diversity jurisdiction under 28 U.S.C. § 1332. From the pieces of information that the court could glean from plaintiff's various submissions, it certainly appears it does, in fact, have jurisdiction over this matter. Plaintiff is a foreign company with its principal place of business in Taipei City, Taiwan. Defendant PLS is a limited liability company. Although its citizenship is incorrectly alleged in the second amended complaint (*see* dkt. #4-1, at ¶4), plaintiff has indicated in its brief that PLS's sole member is Zhang, who in turn is alleged to be a "resident" of the state of Washington. Of course, "residence may or may not demonstrate citizenship, which depends on domicile[.]" *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). No later than seven days from the date of this order, plaintiff should file an affidavit correcting the deficient allegations of citizenship by confirming that (1) Zhang is the sole member of PLS; and (2) Zhang is *domiciled* in the state of Washington.

The merits of the underlying lawsuit between the parties are *not* before this court. Rather, that dispute -- an action for breach of contract based on PLS's alleged actions in

instructing retailers to divert payments to itself that are actually owed to IDT -- is pending in the United States District Court for the Northern District of California, Case No. 14-cv-00078 (N.D. Cal. 2014). IDT has asked this court to take judicial notice of the submissions in that case. Given that they are public court documents and thus a matter of public record, the court will grant that request. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (courts may judicially notice "public records and government documents, including those available from reliable sources on the Internet"). Based on that record, and the supporting affidavits filed in this case, the court finds the following facts and procedural history to have been adequately shown for purposes of this lawsuit.

    A.    Facts

IDT and PLS entered into a purchase agreement in March of 2012. Pursuant to that agreement, IDT provided PLS with an initial credit line of $150,000, and PLS placed its first product orders with IDT on May 12, 2012. On an ongoing basis thereafter, IDT continued to manufacture and ship lighting products, and PLS paid IDT directly. Among PLS's largest customers was Menard, Inc., a privately-held Wisconsin corporation based in Eau Claire, with retail stores located across the Midwest.

In November of 2012, the parties agreed to modify the payment terms so that PLS's payments would coincide with its receipt of payments from Menard in exchange for an increase in PLS's line of credit. However, PLS failed to comply with this new agreement. By the end of December, PLS had incurred substantial debt to IDT.

In April of 2013, IDT and PLS entered into a new written agreement in which PLS acknowledged the amounts owed to IDT and agreed to pay off $150,000 of the debt immediately. The remaining balance would be paid down by instructing all its vendors, including Menard, to submit their payments to a post office box in California. IDT would then forward 25% of Menard's payments to PLS, while keeping the remainder to pay down the debt. In October of 2013, PLS allegedly committed a material breach of that agreement by instructing Menard to bypass the bank accounts and instead send payment directly to PLS for goods manufactured and shipped by IDT.

In December, IDT learned that PLS's customers had received goods valued at $1,572,372.07 and for which PLS had received payment. Before learning of this breach, however, IDT had already manufactured and shipped goods fulfilling seven more purchase orders for PLS, totaling $228,457.16. Allegedly, Menard has yet to pay any of these purchase orders.

It is this amount that IDT seeks to attach, arguing that there is a substantial likelihood PLS will continue to breach the agreement by directing those payments be made to PLS, rather than the California bank account.

B.   Procedural History

IDT filed suit in the Northern District of California against PLS on January 6, 2014, alleging claims for (1) breach of contract, (2) anticipatory breach of contract; (3) money had and received, and (4) fraud. PLS was served with the complaint in that lawuit on January 15, 2014. On January 16, IDT filed an *ex parte* application for writ of

attachment, seeking the $228,457.16 that Menard owed PLS and that PLS, in turn, owed IDT. PLS did not appear or object to the application. On January 24, 2012, the Magistrate Judge granted that request. (Dkt. #4-4.)

The writ itself was issued on that same day directing the Sheriff of Eau Claire County to attach the specified payments from Menard. Because the writ failed to specify that the levying officer was to retain custody of the property pending the entry of judgment or further order of the court, Menard elected to send a check to the Eau Claire County Sheriff's Department, which then forwarded it to the California district court. To cure the deficiency, IDT filed another application for issuance of an additional writ of attachment, which the Magistrate Judge granted over PLS's objections.

On April 14, 2014, defendants filed a motion for relief, claiming that a California court lacks the authority to issue a writ of attachment to levy property located outside of California. The district court granted the motion, specifically holding that "[s]ince Menard is located in Eau Claire County, Wisconsin, the attachment order must be directed to the Sheriff or Marshal in that county" but that "the Magistrate lacked the authority to issue an order to attach property located in another state." (*See* Timothy D. Edwards Aff. Ex. G (dkt. #4-7) 7 (order granting relief).) The California district court apparently then returned the check to Menard, who cancelled and destroyed it. This lawsuit followed.

OPINION

In Wisconsin, the statute governing the basis for issuance of a prejudgment writ of attachment is Wis. Stat. § 811.03, which reads in relevant part:

>   **(1) On contract or judgment.** Before any writ of attachment shall be executed the plaintiff or someone in the plaintiff's behalf shall make and annex thereto an affidavit setting forth specific factual allegations to show that the defendant is indebted, or that property of the defendant is available, to the plaintiff in a sum exceeding $50 specifying the amount above all setoffs, and that the same is due upon contract or upon a judgment and that the affiant knows or has good reason to believe either:
>
>   . . . .
>
>   (b) That the defendant has disposed of or concealed or is about to dispose of or conceal the defendant's property or some part thereof with intent to defraud the defendant's creditors; or
>
>   (c) That the defendant has removed or is about to remove property out of this state with intent to defraud the defendant's creditors; or [. . .]
>
>   (e) That the defendant is not a resident of this state; or
>
>   (f) That the defendant is a foreign corporation; or if domestic that no officer or agent thereof on whom to serve the summons exists or resides in this state or can be found.

Along with its motion for writ of attachment, IDT has submitted two declarations to meet these requirements: one from Peter Tsai, the CEO of IDT (dkt. #3-1); and one from Tim Monroe, the President of Illumination Dynamics, LLC (IDT-California), the U.S. sales and marketing representative for IDT (dkt. #3-2). In his declaration, Tsai provides support for the background facts of the contractual relationship between IDT and PLS as set forth above, including: (1) the renegotiation of payment terms; (2) the breakdown of the agreement in November 2012, when PLS's payments stopped correlating with IDT's invoices; (3) the substantial debt PLS owed as of December, 2012; (4) the new agreement in April of 2013; and (5) PLS's circumvention of that new

agreement in October of 2013 by directing payments directly to itself. Tsai also declares that: (1) the value of Menard's unpaid purchase orders total $228,457.16, and (2) he expects PLS to direct Menard to pay PLS directly in violation of its contractual obligations if the writ of attachment does not issue. In support of his declaration, Tsai attaches two exhibits: (1) the initial e-mail chain between Tsai and Zhang, in which they negotiated the $150,000 line of credit; and (2) the April 2013 agreement in which PLS acknowledged its debt to IDT in the amount of $1,474,879.41 and agreed to the arrangement by which PLS's customers would submit payment to a designated post office box under IDT's control. (*See* dkt. #3-1, at 10-11.)

In his declaration, Tim Monroe provides detail as to what occurred after the parties' April 2013 agreement. He declares that IDT-California's account manager, Kailan Chow, worked with PLS to obtain a post office box for the payments of PLS's customers, and that Chow would retrieve payment checks from the post office box and deposit them in a dedicated bank account, directing 25% of any payments from Menard to PLS as per the agreement. The last check Chow received was dated October 10, 2013. Beginning in November of 2013, Chow began to question PLS and Zhang about the lack of payments. Monroe also declares that he received an e-mail from Zhang that indicated PLS was out of money. By the time Monroe received that e-mail, IDT had already shipped products to Menard under seven purchase orders, totaling $228,457.16. Finally, Monroe declares that he demanded Menard's check be sent to the dedicated post office box, but that PLS and Zhang refused. As of January 16, 2014, PLS was indebted to IDT in the amount of $1,892,776.63. Monroe's declaration also includes several exhibits as

support: (1) the e-mail chain in which Zhang acknowledged that PLS could no longer pay its bills; (2) the unpaid purchase orders, totaling $228,457.16; (3) the e-mail chain memorializing PLS's failure to send the money from Menard to the post office box; and (4) a chart outlining the amounts that PLS and Zhang owe to IDT.

As summarized above, the requirements of Wis. Stat. § 811.03 are met here. First, the declarations submitted in support of the motion set forth specific facts showing that (1) PLS is indebted to IDT for over $1,800,000; and (2) that an apparently outstanding $228,457.16 is due and owing to IDT from Menard pursuant to the parties' contract.[2] Second, at a minimum, §§ 811.03(1)(e) and (f) are satisfied since PLS is a foreign corporation (according to the complaint, it is located in Washington State, and its sole member is Zhang, who also resides in Washington State). Third, § 811.03(1)(b) is likely also satisfied because both affiants have good reason to believe that PLS has concealed payments due to IDT and is about to misdirect additional payments due from Menard to bypass the post office box. Fourth, § 811.03(1)(c) is also satisfied because IDT has good reason to believe PLS has wrongfully removed money from this state with an intent to defraud its creditor and is about to do so again. Though not dispositive, it is also relevant and persuasive that a California federal court found good cause to issue a similar writ not once but twice until technical defects in its first writ and jurisdictional problems in the second writ rendered them unenforceable.

---

[2] According to the terms of the agreement itself, failure to strictly perform any of its obligations constitutes substantial default and authorizes IDT to pursue its claim for the then-outstanding debt of $1,474,879.41, plus new inventory, reasonable interest and legal fees, less any payments and applicable credits. (Dkt. #3-1, at 11.)

Under Wis. Stat. § 811.06, IDT must provide the court with a bond in a sum "sufficient to provide adequate security to the defendant for any damages the defendant may sustain by reason of the attachment." The California court imposed a bond in the amount of $10,000 when issuing the previous writ of attachment, and this court finds that sum to be appropriate. IDT must also include an affidavit of surety stating "that the surety is a resident and householder or freeholder within the state and worth double the sum specified in the bond in property therein above his or her debts and exclusive of property exempt from execution." *Id.*

Finally, IDT has requested that its writ issue not only against PLS but also against Zhang, on the grounds that Zhang is allegedly PLS's alter ego and is thus liable for his company's debts. *See Consumer's Co-op. of Walworth Cnty. v. Olsen*, 142 Wis. 2d 465, 484, 419 N.W.2d 211 (1988) (describing alter ego doctrine in Wisconsin). The court declines to extend its findings with respect to PLS to Zhang, however. If Zhang is truly PLS's alter ego, that is more appropriately left for the California court to decide on the merits of the underlying breach of contract action.

ORDER

IT IS ORDERED that:

(1) plaintiff's motion for *ex parte* writ of attachment (dkts. #2, 9) is GRANTED against defendant Pacific Lighting Solutions, LLC and DENIED against defendant Bill Zhang; and

(2) the clerk of court shall issue a writ substantially in the form attached immediately after plaintiff has posted a $10,000 bond, an affidavit of surety and an affidavit confirming the actual citizenship of both defendants.

Dated this 30th day of October, 2014.

                BY THE COURT:

                /s/

                William M. Conley
                District Judge